UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RACHEL BORST,

                         Plaintiff,

  - against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARINA, CHANCELLOR, YOLANDA
TORRES, SUPERINTENDENT, ANGEL FANI, and
SARADA MURCHISON, all sued in their individual and
official capacities,

                       Defendants.
-------------------------------------------------------------------x

Docket #

**COMPLAINT**

JURY DEMANDED

The plaintiff, by her attorneys, The Behrins Law Firm, PLLC, complaining of the

defendants, alleges as follows:

<u>**NATURE OF ACTION & PARTIES**</u>

1. This is an action arising under the Age Discrimination in Employment Act, 29

   U.S.C. §623, the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.*, and

   the Fourteenth Amendment, the New York State Executive Law (Human Rights

   Law) §290, *et seq.,* Chapter I, Title 8 of the Administrative Code of the City of

   New York, §8-107(1)(a) (referred to as the Human Rights Law of the City of New

   York), New York Labor Law §740 (Retaliatory personnel action by employers),

   asserting claims for violations of the foregoing statutes and retaliation for

   complaining thereof against the defendants, and for workplace harassment.

2. That the plaintiff, RACHEL BORST, at all relevant times herein, was and is a

   resident of the State of New York, County of Kings.

3. That the plaintiff, RACHEL BORST, was employed by defendant Department of Education since 2010.

4. Defendant New York City Department of Education ("DoE") is a school board organized under and existing pursuant to the Education Law of the State of New York, and, for all purposes, serves as the public employer of all persons appointed or assigned by it.

5. Defendant Carmen Farina was, at all times mentioned herein, the Chancellor of the DoE.

6. Defendant Yolanda Torres was, at all times mentioned herein, the Superintendent of Community School District 7.

7. Defendant Angel Fani was, at all times mentioned herein, the principal of I.S. 162X.

8. Defendant Sarada Murchison was, at all times mentioned herein, the assistant principal of I.S. 162X.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1367, and principles of pendent jurisdiction in that the city, state, and federal law claims arise from a common nucleus of operative facts.

10. Plaintiff RACHEL BORST filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") on or about August 2016.

11. On or about February 22, 2015, the EEOC issued a notice informing the plaintiff of her right to sue.

12. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under the Age Discrimination in Employment Act and the Americans with Disabilities Act.

13. As the unlawful employment practices complained of herein occurred within the New York Judicial District, venue is proper in this District.

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

14. The plaintiff's teaching license area is English as a Second Language ("ESL"); she attained her initial certificate in 2010 after obtaining a master's degree from Hunter College.

15. The plaintiff began full time employment with the New York City Department of Education (hereinafter referred to as "DoE") at I.S.162X in September 2010. The plaintiff enjoyed an excellent record throughout her employment for the years 2010-2014.

16. That during the 2014-2015 school year, the plaintiff was eligible for tenure, which was denied at the end of the year, citing the plaintiff's performance as the reason for the denial.

17. That from 2010-2014, the plaintiff was assigned to teach ESL and performed in exemplary fashion.

18. That in the plaintiff's extension of probation, which she received in May 2014 in lieu of receiving tenure, it explicitly stated that she would be teaching ESL for the 2014-2015 school year.

19. That beginning in the fall of 2014, the plaintiff was forced to teach English Language Arts ("ELA,") which is a subject she was not licensed to teach, and in complete contravention of the aforesaid extension of probation.

20. That none of the younger teachers and none of the male teachers were assigned to teach a subject outside of their license areas. During that particular school year, the plaintiff was the only teacher at the school teaching outside of his or her licensed area.

21. That the plaintiff expressed her concerns to the United Federation of Teachers ("UFT") in August 2014. She was advised to be silent and not make waves since she was tenure eligible that very year and already had an excellent record.

22. That throughout the months that followed, the plaintiff was subject to disparate treatment due to her age and disability.

23. That at the beginning of the 2014-2015 school year, the plaintiff was assigned to teach 6th, 7th, *and* 8th grades, while other teachers were only given one grade to teach.

24. That the plaintiff was given excessive work, well beyond what even the most experienced ELA teachers were asked to do.

25. That this occurred at a time when the defendant was shifting to a completely new, comprehensive, and challenging ELA curriculum.

26. That the lowest-performing ELA class, Class 603,  was disingenuously and continuously used to measure the plaintiff's performance.

27. That the plaintiff' Class 603 contained 15 students, seven of whom were not even designated as ESL and 11 of whom had severe learning disabilities, as well as

behavior problems. These 11 students all had cognitive disabilities beyond the plaintiff's range of teaching expertise. They were officially designated as Students with Disabilities ("SWD").

28. That the plaintiff requested but was denied any type of assistance in supporting the special needs of her students.

29. That the plaintiff was provided no special training in how to appropriately handle her students of special needs.

30. That the plaintiff requested but was denied any additional support, such as a para-professional ("para"), for students with special needs, whereas the younger teachers and male teachers were regularly provided with paras, access to extra training, workshops and supplemental technology, including regular access to student laptops.

31. That despite the fact that the school had received an official recent rating of "unsafe" by the city, the plaintiff was the only teacher during 2014-15 to be placed in a teaching space with no lock on the door. The plaintiff was also not provided with a locker to secure her personal or professional belongings, despite repeated email requests.

32. That such negligence by the school personnel led to repeated vandalism of the plaintiff's room by a specific group of vindictive students from Class 603, including acts that were witnessed by other teachers, caught on camera, and reported by the plaintiff.

33. That these same students with disabilities from Class 603 misbehaved frequently in class and were, at times, dangerous. On numerous occasions, the plaintiff was threatened both verbally and physically.

34. That these students with disabilities would also make fraudulent allegations against the plaintiff, which the defendants would actively support without evidence.

35. That in October 2014, the plaintiff was given a disciplinary letter for verbal abuse despite no evidence it had occurred. This jeopardized the plaintiff's chances for tenure.

36. That the plaintiff would receive two more letters in her file as a result of false accusations of verbal abuse by the end of the 2014-2015 school year. Both of these accusations stemmed from incidents in Class 603.

37. That the plaintiff spoke with the UFT "coach" at I.S. 162X, whose job was to assist teachers. While this teacher coach regularly met with and supported teaching staff in her office and in their classrooms, usually on a weekly basis, the plaintiff only received vague emails.

38. That the defendants prevented the plaintiff from keeping a critical appointment with the coach scheduled for the week before her formal observation to help her prepare for the observation on January 13, 2015.

39. That the defendants also prevented the plaintiff from attending a union authorized pre-observation meeting that she had scheduled long in advance with her UFT coach. Instead, the principal mandated that the formal observation occur in a class

outside of the plaintiff's license area, which is in direct violation of the Collective Bargaining Agreement.

40. That negative classroom circumstances, such as the pre-sanctioned removal of a non-ESL student with severe behavior problems, were scheduled to be rectified prior to the observation; they were not. Unsurprisingly, the plaintiff received an unsatisfactory rating on this observation after this student, unaccompanied by a paraprofessional, repeatedly engaged in disruptive behavior, including loud false accusations against the plaintiff.

41. That the plaintiff filed a formal rebuttal to the observation. The defendants would not follow up on her request or provide her another opportunity to be observed. This is in spite of the fact that in the Fall of 2014, the plaintiff had been assured of multiple formal and informal observations that would occur throughout the school year.

42. That the defendants purposefully misused quotes from the plaintiff's rebuttal in an effort to defame her character in a highly damaging disciplinary letter she was given on May 6, 2015.

43. That from September through December of 2014, the plaintiff was forced to teach without any classroom technology, such as a laptop or a projector. The younger teachers received modern equipment at the beginning of the year while the plaintiff's multiple requests for technology repeatedly fell on deaf ears.

44. That the plaintiff never even received a mandated post-observation conference with the defendants following her November 12, 2014 observation, which was rated unsatisfactory.

45. That the defendants also attempted to sabotage the plaintiff by denying her access to necessary curriculum items when she needed them, and delayed supplying her classroom with technology, which was especially necessary to effectively teach ESL students and students with special needs.

46. That the defendants barred the plaintiff from attending outside professional development seminars during school hours while other teachers at I.S. 162X were permitted to do so.

47. That in the same year, two other female teachers over the age of 45, Maria Scheidel, then age 67, and Ysena Peña, then age 48, were also tenure eligible. They, too, were denied tenure in June 2015 and discontinued by the defendants.

48. That the plaintiff and Scheidel and Peña, the oldest female teachers in the school, were the only three teachers at I.S. 162X to lose their jobs at the end of the 2014-2015 school year.

49. That Ms. Scheidel was discontinued directly after she returned from health leave for an on the job injury she suffered after being struck by a student.

50. That Ms. Pena was discontinued after having taken time off during 2015 for kidney surgery.

51. That the defendants replaced the plaintiff and her ESL colleague with two younger teachers.

52. That shortly after the plaintiff revealed to the defendants in 2012 that she suffered from epilepsy, she was placed into a rotating teaching pool outside of the direct location she worked in, called the Absent Teacher Reserve ("ATR") pool.

53. That the plaintiff was effectively dismissed from duty for an entire year during 2012-2013 without actually being terminated. This was done even though her performance record for 2011-2012 was rated satisfactory.

54. That the defendants intentionally designated the plaintiff as an ATR because it results in a problem code being affixed to her personnel file, sullying her record.

55. That during 2014-2015, the plaintiff discovered a letter in her personnel file from her neurologist regarding an appointment she had. Because materials in teachers' personnel files are used to determine tenure, the clear implication is that the defendants were factoring in the plaintiff's medical condition to determine whether she should be granted tenure.

56. That on April 21, 2015, the plaintiff felt extremely dizzy and shaky due to lack of medication. She feared she might have a seizure and requested to go home and take extra medication. Rather than express concern over her well being, the defendants demanded she then provide explicit and specific information regarding why she needed to leave for the day despite the fact that the plaintiff could have lost consciousness while on duty.

57. That on April 29, 2015, the plaintiff filed a report after being assaulted by a student in Class 603. The matter was not investigated and no student was ever disciplined for the attack.

58. That also on April 29, 2015, the plaintiff submitted her tenure portfolio with all requested materials to Principal Fani, including exemplary data, evidence of meticulously designed research-based instruction and numerous examples of outside professional engagement.

59. That on May 6, 2015, the plaintiff received a summons to attend a disciplinary meeting pursuant to a false accusation of verbal abuse.

60. That on May 13, 2015, the plaintiff received a disciplinary letter in her file from Principal Fani. This letter was written in retaliation to the plaintiff's rebuttal of her formal observation of January 24, 2015.

61. That on May 14, 2015, the plaintiff was forced to sign the last of her informal observations. The defendants provided no feedback on her performance. She was, however, able to review witness statements regarding the allegations of verbal abuse. The statements were inappropriately marked up by Principal Fani and largely from April 29, 2015, the date on which the plaintiff was attacked by a student in Class 603.

62. That on May 18, 2015, the plaintiff filed a grievance regarding her informal observation of April 28, 2015.

63. That on May 21, 2015, the plaintiff was publicly humiliated by UFT coach Irene Castro, causing the plaintiff to leave the meeting in tears.

64. That on May 26, 2015, the plaintiff was unable to attend a professional development seminar outside of the school unless she agreed to use one of her "banked" days. All other teachers were regularly released for outside professional development without having to relinquish an earned day.

65. That on June 4, 2015, the plaintiff met with Principal Fani and a union representative to discuss Step 1 of the improper investigation of verbal abuse. During the meeting, Principal Fani dodged the allegation that he violated the plaintiff's contractual rights by marking up and utilizing observation rebuttal form

to discipline and spent much time talking with the union representative about matters irrelevant to the one at hand.

66. That on June 9, 2015, the plaintiff met with Principal Fani and a union representative to discuss her Annual Professional Performance Review ("APPR"). The plaintiff noted that she was teaching outside of her license area. The plaintiff alleged that Assistant Principal Murchison did not provide enough evidence to justify her dubious claims, which resulted in the plaintiff being improperly rated. Fani provided no feedback.

67. That on June 9, 2015, a young female teacher happily claimed that the defendants had recently met with her and changed some of her observation ratings from low to high. Like the plaintiff, this teacher had most of her informal observations conducted by a specific staff member who worked directly under the principal. The young teacher informed that the principal joked around during this meeting that the assistant had been unfair to her. The plaintiff was never afforded such kind treatment.

68. That on June 10, 2015, a student in Class 603 falsely accused the plaintiff of swearing and threatened the plaintiff's livelihood after the plaintiff tried a quiet intervention to get the student back on task.

69. That on June 11, 2015, the plaintiff received an email from Principal Fani denying Step 1 of APPR Resolution Request.

70. That on June 12, 2015, the same student form the June 10, 2015 incident threatened the plaintiff with violence. Shaken by the incident, the plaintiff prepared an incident report and notified the Assistant Principal, the school dean,

and the student's psychologist that same day. She also placed a copy of the report in Fani's mailbox as he was absent that day.

71. That on June 13, 2015, the plaintiff notified Principal Fani via email of the incident of June 12 and her concern of the lack of safety in Class 603.

72. That on June 13, 2015, the school dean, Ms. Negron, emailed the plaintiff and scolded the plaintiff for not contacting her in a timely manner about the incident. However, the plaintiff had contacted Ms. Negron in class on the day of the incident.

73. That on June 15, 2015, the plaintiff responded to Principal Fani's questionnaire about the student who perpetrated the recent issues and her erratic behavior. The response included a bullying incident she initiated in February 2015, the fact that she was moving between two peer groups (one positive and the other negative), and the fact that her grades were rapidly declining.

74. That on June 16, 2015, the plaintiff held a parent-teacher conference with the student and her mother to discuss the student's behavior. In attendance were the student's social worker, Ms. Robles, and two of her other teachers. The other teachers confirmed the behavioral issues. The meeting was very positive and the student apologized to the plaintiff for threatening her and the student apologized for her disrespectful behavior. At the conclusion of the meeting, Ms. Flores, who had initiated the case, asked for the plaintiff's forgiveness.

75. That on June 17, 2015, the plaintiff was given her end of year Measures of Teacher Practice ("MOTP") rating of "ineffective" (an MOTP rating of 15) during a conference with Principal Fani. In previous years, the plaintiff received

MOTP ratings of 44 and 75. The plaintiff also received the then top possible

rating of "satisfactory" the previous two years. In those two years, the plaintiff

was teaching within her license area. In the 2014-2015 school year, she was not.

76. That on June 26, 2015, the last day of school, Principal Fani drew the plaintiff's

attention to two disciplinary letters that he put her in school mailbox stemming

from the unsubstantiated allegations of verbal abuse for which the two had met on

November 5, 2014. Both of the letters were undated and neither contained a case

number. The plaintiff provided copies of the letters to her union.

77. That on June 30, 2015, the plaintiff discovered she was denied completion of

probation. The plaintiff requested an appeal through the UFT of her denial of

completion of probation pursuant to New York State Education Law 3012c (5-a).

78. That on June 30, 2015, the plaintiff received her tenure decision via email from

Principal Fani. He based his decision on the plaintiff's portfolio and her ratings

for the previous two years. He maliciously tried to deny the validity of the

plaintiff's 2014 effective rating despite the evidence and data clearly showing the

plaintiff deserved the positive review.

79. That on July 2, 2015, the plaintiff filed a formal appeal of her denial of probation

completion to Superintendent Yolanda Torres, District 7, which was ultimately

denied.

80. That on July 7, 2015, the plaintiff received an email from Principal Fani falsely

accusing her of harassing I.S. 162X and Superintendent Torres for her personnel

file.

81. That on July 22, 2015, Principal Fani notified his staff by email that they had one year to improve before being placed into receivership status. He admitted in the email that the previous year there was a vacancy for a 609 SWD class, which could possibly account for why many non-ELL special education students were unjustly placed in the plaintiff's class.

82. That on July 31, 2015, the plaintiff was denied employment at a charter school she had interviewed at that day.

83. That on August 5, 2015, the plaintiff interviewed at I.S. 22X, but was denied this ESL job opportunity due to her 2014-2015 rating.

84. That on May 27, 2016 the plaintiff was discharged from a job at a charter school in the Bronx after a satisfactory year. The principal provided no reason for termination but stated to plaintiff she had moved her students forward. Plaintiff also received a recommendation from this school.

85. That on June 1, 2016, the plaintiff formally appealed the decision to deny her tenure at a meeting held at 65 Court Street complete with union representation and witnesses from the school who spoke on her behalf.

86. That since June 1, 2016, the plaintiff has been provided with no decision as to the outcome of this appeal hearing, despite repeated contact with the Office of Appeals and Reviews, written requests to the Bronx UFT, and a formal letter sent to the new Superintendent of District 7, Elisa Alvarez, in March of 2017.

87. That in October 2016, the plaintiff was denied the opportunity to work as a substitute at the DoE despite receiving a nomination from a public school in

Midwood, Brooklyn.  Related emails between October and December stated this was due to the unsatisfactory rating received in 2015 at I.S. 162X.

88.  That since October 2016, many public schools, including PS 112, PS 200 and PS 52 among others, have continuously contacted the plaintiff by phone with offers of substitute work. The plaintiff has been unable to accept any of these offers, thus adding to the plaintiff's mental pain and economic hardship.

89. That in the summer of 2016 alone, the plaintiff was denied employment at over 10 charter schools she applied to. That since June 2016, the plaintiff remains unable to secure employment due to the unfair and discriminatory treatment she received at the hands of the defendants.

90. That in December 2016, the plaintiff was denied the opportunity to work at an elementary public school in Park Slope, Brooklyn, PS 124, because of the unsatisfactory 2014-2015 rating she received.

91. The plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (Charge No. 520-2016-01513).

## AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF THE AGE DISCRMINATION IN EMPLOYMENT ACT

92. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's as if more fully realleged and set forth at length herein.

93. That the defendants' actions unlawfully discriminated against the plaintiff as a result of her age.

94. As a result of the foregoing, the plaintiff sustained economic damages, including, but not limited to, the inability to secure employment.

95. As a result of the aforesaid, the plaintiff was rendered sick, lame, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, and nervous shock, all to her damage.

## AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

96. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's as if more fully realleged and set forth at length herein.

97. That the defendants' actions unlawfully discriminated against the plaintiff as a result of her disability.

98. As a result of the foregoing, the plaintiff sustained economic damages, including, but not limited to, the sullying of her professional reputation and the corresponding inability to secure employment.

99. As a result of the aforesaid, the plaintiff was rendered sick, lame, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, and nervous shock, all to her damage.

## AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

100. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint designated as if more fully realleged and set forth at length herein.

101. That in or about 2010, the defendants and the plaintiff entered into an employment agreement that governed the employer/employee relationship in the form of the collective bargaining agreement.

102. That the egregious, unjustified conduct of the defendants constitutes a breach of the employment agreement between the plaintiff and defendants.

103. As a result of the foregoing, the plaintiff sustained and continues to sustain severe economic hardship.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR *PRIMA FACIE* TORT

104. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint designated as if more fully realleged and set forth at length herein.

105. That the defendants' actions constitute a *prima facie* tort.

106. As a result of the foregoing, the plaintiff sustained and will continue to sustain economic damages.

107. That by reason of the aforesaid, the plaintiff was rendered sick, lame, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, and nervous shock, all to her damage.


WHEREFORE, the Plaintiff, RACHEL BORST, demands judgment against defendants on the First, Second, Third, and Fourth Causes of Action in the aggregate sum of $8,000,000.00, together with costs, interest, attorneys fees, punitive damages, and such other and further relief as this Court deems just and proper. The plaintiff also demands removal of the 2014-15 unsatisfactory rating from her employment record as it represents a false representation of her abilities given the fact that she was not teaching in license area during her tenure year and her final 2014-15 probationary agreement was thus formally breached.

Dated: Staten Island, New York
      May 19, 2017

Jonathan Behrins
The Behrins Law Firm, PLLC
Attorneys for Plaintiff
Office & P.O. Address
1110 South Avenue (Suite 402)
Staten Island, New York 10314
(718) 447-5540
jb@behrinslaw.com