UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RACHEL BORST,

                        Plaintiff,   Docket #17 cv 3041 (RRM)(CLP)

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARINA, CHANCELLOR, all sued in their
individual and official capacities,

                        Defendants.
----------------------------------------------------------------x

**Plaintiff's Memorandum of Law in Opposition to Defendants'**
**Motion to Dismiss the Amended Complaint**

Respectfully Submitted,

*/s/ Jonathan B. Behrins*
Jonathan B. Behrins
THE BEHRINS LAW FIRM PLLC
Attorneys for Defendants
Office & P.O. Address
52 Duane Street, 7th Floor
New York, New York 10007
T: (718) 447-5541
F: (718) 983-5088
jb@behrinslaw.com

## STATEMENT OF FACTS

The plaintiff respectfully refers the court to her Amended Complaint for a recitation of the facts in this matter.

## MOTION TO DISMISS STANDARD

"On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the [non-moving party's] factual allegations as true, drawing all reasonable inferences in [non-moving party's] favor. NY State Catholic Health Plan, Inc. v Acad. O & P Assocs., 2015 US Dist. LEXIS 169526 [EDNY Dec. 18, 2015, No. 15-CV-3298]. "Applying this standard is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Gracey v J.P. Morgan Chase & Co. (*In re* Amaranth Natural Gas Commodities Litig.), 730 F3d 170 [2d Cir. 2013].

## PLAINTIFF'S ADEA AND ADA CLAIMS ARE TIMELY

The defendant argues that the allegations of discrimination occurring more than 300 days prior to the filing of the EEOC Charge are time barred. This is not the case.

The plaintiff did not suffer a series of individual and isolated instances of harassment and discrimination, but rather a continuous and ongoing ordeal. Pursuant to the EEOC website, https://www.eeoc.gov/employees/timeliness.cfm, the EEOC Charge must be filed within 300 days of the last incident. Even assuming the EEOC charge was filed on August 31, 2016, the final discriminatory incident would have had to occur prior to November 5, 2015 for the plaintiff's claims to be time barred. While the plaintiff was denied tenure in June 2015, the discriminatory acts did not end there. As alleged in her complaint, the plaintiff was the victim of discriminatory acts well into 2016, including, most importantly, the apparent denial of her appeal of the decision to deny her tenure on

June 1, 2016, for which no decision ever issued. While it can certainly be argued that the discriminatory acts continue to this day, the final discriminatory act occurred in June 2016, making the claim timely and valid. The defendant's contention that all prior acts are time barred is unsupported by the case law, and, accordingly, should be rejected by this court.

The defendant's actions are subject to the continuing violation doctrine. "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996); see, e.g., Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir.1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEO charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."), cert. denied, 511 U.S. 1052, 114 S. Ct. 1612, 128 L.Ed.2d 339 (1994). Although the continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination, and although acts so "isolated in time ... from each other ... [or] from the timely allegations[ ] as to break the asserted continuum of discrimination" will not suffice, Quinn v. Green Tree Credit Corp., 159 F.3d at 766, a continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994). Fitzgerald v. Henderson, 251 F.3d 345, 359

2

(2d Cir. 2001). Since the last discriminatory act occurred within the proper timeframe, all prior acts leading up to that final act can and must be properly considered by the court.

### PLAINTIFF'S AGE DISCRIMINATION IN EMPLOYMENT CLAIM

Gross v. FBL Financial Services, 557 U.S. 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) makes clear that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor. Gross did not, however, reject the McDonnell Douglas burden-shifting framework for ADEA cases altogether. Instead, it left that issue open, noting only that the Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas ... is appropriate in the ADEA context." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105 (2d Cir. 2010).

In order to establish a *prima facie* case of age discrimination, the plaintiff must show that [s]he was (1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination. "The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal." *See* St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir.1997); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).

Ms. Borst was born October 30, 1957. There is no dispute over the fact that Ms. Borst was well qualified for her position. There is also no dispute over the fact that Ms. Borst was discharged. The sole issue of contention here is the fourth element. As the case law states, that burden is quite low.

Ms. Borst pleaded that none of the younger teachers were assigned to teach a subject outside of their license area. She was the only teacher assigned to multiple grades, having been required to teach sixth, seventh, and eighth grade. The plaintiff was given a heavier workload than the younger teachers. The plaintiff was denied a paraprofessional when all of the younger teachers received the benefit of paraprofessional assistance. The same year the plaintiff was denied tenure, two other female teachers, both within the protected age group, Maria Scheidel, then age 67, and Ysena Peña, then age 48, were also denied tenure. They, along with the plaintiff, were the oldest female teachers at the school and the only ones to lose their jobs at the conclusion of the 2014-2015 school year. All three were replaced by far younger counterparts. "Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000)

In Jones v. New York City Dep't of Educ., 286 F. Supp. 3d 442, 449 (E.D.N.Y. 2018), the court found that the "plaintiff has successfully pleaded his age discrimination claim." In Jones, the "plaintiff alleges (1) he was 63 years old, (2) had a long, dignified service as a track coach and math teacher, and (3) that he was terminated, satisfying the first three elements. Plaintiff also pleads facts that create the required "minimal inference of discriminatory motive." He alleges that his firing was pretextual, that coworkers have told him that Gassaway "doesn't like old timers," that a younger coach was treated substantially better than him, and that the DOE replaced 45 older substitute teachers with younger ones." The facts alleged in the complaint "need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). "Circumstances contributing to an inference of age-based

employment discrimination may include: ... a sequence of events leading to an employee's termination; or the timing of the termination." Powell v. Delta Airlines, 145 F. Supp. 3d 189, 200 (E.D.N.Y. 2015).

## PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIM

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." Id. § 12102(1)(A). *McElwee v. Cnty. of Orange*, 700 F.3d 635, 644 (2d Cir. 2012). Here, the plaintiff suffers from epilepsy, but can perform all of her necessary job functions with minimal accommodations.

"In order to establish an employment discrimination claim under the ADA, Furman must demonstrate that his employer is subject to the ADA; that he was a person with a disability within the meaning of the ADA; that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and that he suffered adverse employment action because of his disability." *Furman v. City of New York*, 2009 WL 4626706 (EDNY 2009).

A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. See *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir.1999) (relying on *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). To be

"materially adverse" a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady*, 993 F.2d at 136. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id.; see *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (ADEA protects the employee against "less flagrant reprisals" than termination or a reduction in wages and benefits). *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000).

Under Title VII, discrimination can be demonstrated through evidence of either 'disparate treatment' or 'disparate impact.' To show 'disparate treatment,' the plaintiff is "required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). 'Disparate impact' is based upon the premise "that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2d Cir. 1993). In 2012, Ms. Borst revealed to the defendant that she suffered from epilepsy. Shortly thereafter, the defendant placed her in the Absent Teacher Reserve ("ATR") pool. This was a calculated maneuver to smear the plaintiff's record and it was a clear precursor to termination. Placing a teacher in the ATR is tantamount to dismissal without actually terminating the teacher.

During the 2014-2015 school year, the plaintiff discovered that the defendant had placed a letter in her file regarding a neurologist appointment she had. On April 21, 2015,

6

the defendant reacted very unfavorably to the plaintiff's dizziness and shakiness due to lack of medication. Rather than expressing concern for her health, the defendants demanded information as to why the plaintiff needed to leave early.

The plaintiff's amended complaint clearly establishes adverse treatment based up on her disability. Thus, the claim must persist.

### PLAINTIFF'S *PRIMA FACIE* TORT CLAIM

A recovery for prima facie tort affords a remedy for "the infliction of intentional harm resulting in damage without excuse or justification, by an act or series of acts which would otherwise be lawful." Solinsky v. Arthritis Found, 635 F. Supp. 620, 623 (E.D.N.Y. 1986).

The plaintiff's *prima facie* tort cause of action is a pleading in the alternative should the court not allow the plaintiff to pursue either of the first two causes of action as the factual allegations clearly demonstrate malevolent conduct by the defendants for which the plaintiff deserves compensation. The elements for a *prima facie* tort are: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful. Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332, 451 N.E.2d 459, 467, 464 N.Y.S.2d 712, 720 (1983). The touchstone is "disinterested malevolence", meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm. Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990). The plaintiff has sufficiently pled malevolent acts by the defendants in her amended complaint.

## WITHDRAWN CLAIMS

The defendant's memorandum of law addresses the ADA and ADEA claims as to defendant Fariña and the plaintiff's breach of contract claim. As per the plaintiff's letter dated January 15, 2018, the ADA and ADEA claims were amended as to exclude defendant Fariña and the plaintiff's breach of contract claim has been withdrawn.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that this Court issue an order denying the defendants' motion to dismiss the Amended Complaint, together with such other and further relief as the Court may deem just and proper.

Dated: Staten Island, New York
      November 5, 2018