UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
RACHEL BORST,

                       Plaintiff,                    **MEMORANDUM AND ORDER**

      -against-                                   17-CV-3041 (RRM) (CLP)

NEW YORK CITY DEPARTMENT OF EDUCATION *et al.*,

                       Defendants.
------------------------------------------------------------------------x
ROSLYNN. R. MAUSKOPF, United States District Judge.

      Plaintiff Rachel Borst ("Borst" or "Plaintiff"), a former employee of defendant New York City Department of Education ("DOE"), brings this action against the DOE and its former Chancellor, Carmen Farina (collectively, "Defendants"), advancing federal employment discrimination claims and a state-law claim for prima facie tort. Defendants now move to dismiss this action, arguing, among other things, that Borst did not file her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly discriminatory acts and did not file her state-law claim within one year and ninety days of the allegedly tortious acts. For the reasons set forth below, Defendants' motion is granted, and this action is dismissed.

## BACKGROUND

      The following facts are drawn from Borst's amended complaint and are accepted as true for purposes of this motion. Borst, who holds a master's degree from Hunter College, attained her initial teaching certificate in 2010. (Am. Compl. (Doc. No. 16) at ¶ 11.) In September of that year, she was employed by the DOE to teach at I.S. 162X. Up until the 2014–15 school year, Borst enjoyed "an excellent record." (*Id.* at ¶ 12.) However, after revealing to the DOE that she suffered from epilepsy, she spent the entirety of the 2012–13 term in the Absent Teacher

Reserve ("ATR") pool – a reserve pool of teachers who work as substitutes and lack permanent class assignments. (*Id.* at ¶ 49.) Borst alleges that the DOE assigned her to the ATR pool because this resulted in "a problem code being affixed to her personnel code, sullying her record." (*Id.* at ¶ 51.)

The 2014–15 School Year

In May 2014, in lieu of granting Borst tenure, the DOE extended her probationary period for another year. (*Id.* at ¶ 15.) Borst therefore became eligible for tenure at the end of the 2014–15 school year. (*Id.* at ¶ 13.) Borst alleges, however, that she was subjected to disparate treatment due to her age and disability during this pivotal term, which ultimately resulted in her being denied tenure. (*Id.* at ¶¶ 13, 19.)

First, instead of being assigned to teach English as a Second Language ("ESL"), which is within Borst's "license area," Borst was assigned to teach English Language Arts ("ELA"), a subject she was not licensed to teach, at a time when the DOE was "shifting to a completely new, comprehensive, and challenging ELA curriculum." (*Id.* at ¶¶ 11, 16, 22.) In addition, she was "given excessive work, well beyond what even the most experienced ELA teachers were asked to do," and assigned to teach sixth, seventh, and eighth grade classes, including Class 603 – the lowest performing ELA class. (*Id.* at ¶¶ 20–21, 23.) Borst alleges that during the 2014–15 school term, she was the only one at the school teaching outside her license area and teaching more than one grade. (*Id.* at ¶¶ 17, 20.)

Seven of the Class 603's 15 students were "not even designated as ESL," and eleven were "officially designated as Students with Disabilities ('SWD')," having both severe learning disabilities and behavioral problems. (*Id.* at ¶ 24.) Teaching students with cognitive disabilities was "beyond [her] range of teaching expertise," but Borst was not provided with special training regarding how to handle the special needs students. (*Id.* at ¶¶ 24, 26.) She requested additional

support, such as a para-professional, to assist with these students, but that request was denied. (*Id.* at ¶¶ 25, 27.) According to Borst, younger teachers and male teachers were regularly provided with para-professionals and access to extra training, workshops, and "supplemental technology." (*Id.* at ¶ 27.) She was also the only teacher to be assigned an unlocked classroom, even though the school had been rated as "unsafe" by the city. (*Id.* at ¶ 28.) Borst complained to her union – the United Federation of Teachers ("UFT") – but was advised not to "make waves" because she was up for tenure at the end of that year. (*Id.* at ¶ 18.)

Problems plagued Borst throughout the school year, thanks largely to the students in Class 603. They repeatedly vandalized her classroom and misbehaved frequently, threatening Borst verbally and physically on numerous occasions. (*Id.* at ¶¶ 29–30.) They also made "fraudulent allegations" about Borst, which the school's administrators credited despite a lack of substantiation. (*Id.* at ¶¶ 31–32.) In October 2014, she was given a disciplinary letter based on an unsubstantiated allegation of "verbal abuse," the first of three disciplinary letters Borst was to receive over the course of the 2014–15 school year. (*Id.* at ¶¶ 32–33.)

On November 12, 2014, Borst received an unsatisfactory rating following a classroom observation. (*Id.* at ¶ 41.) She never received a "mandated post-observation conference," however. (*Id.*) Prior to a January 13, 2015, observation, the DOE prevented her from attending meetings with the "UFT coach" – a "teacher coach [who] regularly met with and supported teaching staff in her office and in their classrooms." (*Id.* at ¶¶ 34, 35–36.) In addition, the principal, Angel Fani, violated the UFT's Collective Bargaining Agreement by insisting the formal observation occur "in a class outside of the plaintiff's license area" and failed to remove a non-ESL student with severe behavioral problems. (*Id.* at ¶¶ 36–37.) After that student engaged in "disruptive behavior" during the observation by, among other things, making "loud false accusations against the plaintiff," Borst received a second unsatisfactory rating. (*Id.* at ¶ 37.)

Borst filed a "formal rebuttal to the observation," but she was not afforded another opportunity to be observed. (*Id.* at ¶ 38.)

While in school on April 21, 2015, Borst became "dizzy and shaky" due to lack of medication and feared she might have a seizure. (*Id.* at ¶ 53.) When she requested permission to go home, the administration was unsympathetic and "demanded she … provide explicit and specific information regarding why she needed to leave for the day." (*Id.*) A week later, on April 28, 2015, she received an informal classroom observation. (*Id.* at ¶ 59.) Although the amended complaint does not state what rating Borst received, it alleges that she was "forced to sign the last of her informal observations" and "filed a grievance" relating to this observation. (*Id.* at ¶¶ 58–59.)

On April 29, 2015, Borst was attacked by a student in Class 603. (*Id.* at ¶ 54.) Although she reported the attack, the matter was never investigated, and the student was never disciplined. (*Id.*) On May 6, 2015, Borst received a summons to attend a disciplinary meeting relating to a "false accusation of verbal abuse." (*Id.* at ¶ 56.) When she reviewed the witness statements relating to this accusation, she found that they had been "inappropriately marked up by Principal Fani" and largely related to events which occurred on the day of the attack. (*Id.* at ¶ 58.)

On May 13, 2015, Fani placed a disciplinary letter in her file. (*Id.* at ¶ 57.) Borst's pleading does not describe the contents of that letter. However, she alleges that it was "written in retaliation [for] … plaintiff's rebuttal of her formal observation of January 24, 2015," and "misused quotes from the … rebuttal in an effort to defame her character." (*Id.* at ¶¶ 39, 57.)

On May 26, 2015, Borst was told that she would have to use one of her "'banked' days" in order to attend a professional development seminar outside of the school. (*Id.* at ¶ 61.) Borst alleges that "[a]ll other teachers were regularly released for outside professional development without having to relinquish an earned day." (*Id.*)

On June 4, 2015, Borst attended a disciplinary conference relating to the verbal abuse allegation. (*Id.* at ¶ 62.) Borst accused Fani of violating her contractual rights by improperly marking up and using her rebuttal of her formal observation as a basis for discipline. (*Id.*) Borst alleges that Fani "dodged the allegation[s]," and spent most of the meeting talking with the union representative about unrelated matters. (*Id.*)

Sometime in early June 2015, Borst received her Annual Professional Performance Review ("APPR"), which was apparently prepared by Assistant Principal Sarada Murchison. (*Id.* at ¶ 63.) Borst does not provide any information regarding the APPR, except to assert that she was "improperly rated" and that Murchison "did not provide enough evidence to justify her dubious claims." (*Id.*) On June 9, 2015, Borst met with Fani and a union representative to discuss the APPR. (*Id.*) Borst does not allege what happened in this meeting except to state that "Fani provided no feedback." (*Id.*) However, she alleges that, on the same day, the principal joked around with another, younger teacher and agreed to change some of her observations ratings from low to high, stating that the evaluator – the same person who had evaluated Borst – had been unfair to her. (*Id.* at ¶ 64.) Fani denied "Step 1 of [Borst's] APPR Resolution Request" two days later. (*Id.* at ¶ 66.)

On June 10, 2015, a student in Class 603 falsely accused Borst of swearing and "threatened the plaintiff's livelihood." (*Id.* at ¶ 65.) Two days later, the student "threatened the plaintiff with violence." (*Id.* at ¶ 67.) Although Borst immediately prepared an incident report and notified the assistant principal, the school dean, and the school psychologist, the dean emailed Borst the following day to scold her for not reporting the incident "in a timely manner." (*Id.* at ¶¶ 67, 69.) At a parent-teacher conference on June 16, 2015, the student apologized for threatening Borst and a colleague who had "initiated the case" against Borst asked for her forgiveness. (*Id.* at ¶ 71.)

On June 17, 2015, Borst received an end-of-year Measure of Teacher Practice ("MOTP") rating of "ineffective." (*Id.* at ¶ 72.) In her amended complaint, Borst attributes this low rating to the fact that she was teaching outside of her licensed area, noting that she had received "satisfactory" ratings during the two previous years, during which she taught within her license area. (*Id.*) However, Borst herself suggests that a "vacancy for a 609 SWD class" accounted for the fact that "many non-ELL special education students were unjustly placed in plaintiff's class. (*Id.* at ¶ 78.)

On June 26, 2015 – the last day of school – Fani placed two disciplinary letters in Borst's school mailbox. (*Id.* at ¶ 73.) Both stemmed from "unsubstantiated allegations of verbal abuse" which Fani had discussed with her at a meeting in early November 2014. (*Id.*) Four days later – on June 30, 2015 – Fani informed Borst via email of "her tenure decision." (*Id.* at ¶ 75.) That same day, Borst learned that she was "denied completion of probation." (*Id.* at ¶ 74.)

The Amended Complaint does not specifically allege the date on which the DOE terminated Borst's employment. However, New York Education Law requires that "[e]ach person who is not to be recommended for appointment on tenure … be so notified … not later than sixty days immediately preceding the expiration of his or her probationary period." N.Y. Educ. Law § 2573(1) (McKinney 2015). Accordingly, Borst may have stayed on the payroll until the end of August 2015.

On July 2, 2015, Borst appealed this denial to the Superintendent of District 7, Yolanda Torres. (*Id.* at ¶ 76.) Although the pleading alleges that this appeal was denied, (*id.*), it does not indicate when it was denied.

Post-termination Allegations

Borst also formally appealed the decision to deny her tenure. (*Id.* at ¶ 82.) This appeal resulted in a June 1, 2016, meeting at the DOE headquarters, at which witnesses testified on

6

Borst's behalf. Borst had not received a decision on her appeal as of February 9, 2018 – the date of the amended complaint. (*Id.* at ¶ 83.)

In late July and early August 2015, Borst was interviewed for a position at a charter school and an ESL position at I.S. 22X – presumably, a New York City public school. (*Id.* at ¶¶ 79–80.) She did not receive an offer. (*Id.*) Borst specifically alleges that she was denied the job at I.S. 22X because of her 2014–15 rating. (*Id.* at ¶ 80.) However, she also implies that she ultimately obtained employment at a charter school for the 2015–16 school year. (*Id.* at ¶ 81.)

Despite having a "satisfactory year" at the charter school, she was discharged from this position. (*Id.*) The principal offered no explanation for her discharge, but the school provided her with a recommendation. (*Id.*) Nonetheless, in the summer of 2016, Borst was denied employment at over ten other charter schools to which she applied. (*Id.* at ¶ 86.) Borst does not allege that her discharge from the charter school or the subsequent rejections were attributable to her ratings at I.S. 162X.

In contrast, Borst specifically alleges that she was denied the opportunity to work as a substitute teacher at a public school in Millwood, Brooklyn, in October 2016, and was denied the opportunity to work at an elementary public school in Park Slope, Brooklyn, in December 2016 because of the unsatisfactory rating she received in 2015. (*Id.* at ¶¶ 84, 87.) Yet, the amended complaint also alleges that since October 2016, many other New York City public schools have "continuously contacted the plaintiff by phone with offers of substitute work." (*Id.* at ¶ 85.) The Amended Complaint alleges that Borst "has been unable to accept any of these offers," but does not explain why. (*Id.*) However, the pleading alleges that Borst has been "unable to secure employment" since June 2016 "due to the unfair and discriminatory treatment she received at the hands of the defendants." (*Id.* at ¶ 86.)

In or about August 2016, Borst filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at ¶ 7.) After the EEOC issued a right-to-sue letter, Borst commenced this action in May 2017. (*Id.* at ¶ 8.)

This Action

The original complaint (Doc. No. 1) named five defendants: the DOE, its then–Chancellor, Carmina Farina; Superintendent Torres; Principal Fani; and Assistant Principal Murchison. It contained four causes of action. The first two alleged violations of federal employment discrimination laws: the Age Discrimination in Employment Act, 29 U.S.C. § 623 (the "ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA"). The other two alleged state-law claims for breach of contract and prima facie tort. Although the first paragraph of the complaint asserted that Borst was also bringing discrimination and claims under the New York State and New York City Human Rights Laws and under New York Labor Law § 740, the complaint did not contain causes of action alleging violations of these laws.

Borst never served Torres, Fani, or Murchison. On October 30, 2017, the New York City Department of Law filed a pre-motion conference request on behalf of the DOE and Chancellor Farina. (Doc. No. 10). That letter argued, among other things, that Borst's federal employment discrimination claims were time-barred, that the complaint failed to state a claim under either the ADA or the ADEA, that Farina could not be liable under those statutes in her individual capacity, that Borst lacked standing to bring a breach of contract action, that the complaint failed to state a prima facie tort claim, and that this claim was untimely.

On February 9, 2018, Borst filed an amended complaint. That pleading is identical to the original complaint in all respects except two: 1) it does not name Torres, Fani, or Murchison as defendants and 2) it does not allege a breach of contract action. The DOE and Farina now move

to dismiss the amended complaint on the same grounds advanced in the pre-motion conference request. However, this discussion below addresses only the issues of whether the federal employment discrimination claims and the state-law tort claim are time-barred.

## STANDARD OF REVIEW

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level," and the stated grounds for relief must consist of more than "labels and conclusions." *Twombly*, 550 U.S. at 555. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).

## DISCUSSION

A. <u>Timeliness of the ADEA and ADA Claims</u>

It is well established that a New York plaintiff who wishes to pursue a discrimination or retaliation claim under the ADEA or the ADA must file an EEOC charge within 300 days of the allegedly unlawful practice. *See, e.g.*, *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA); *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998) (ADEA). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" constitute separate actionable unlawful employment practices. *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 114 (2002). A party seeking to recover for a discrete discriminatory or retaliatory act must file a charge of discrimination within 300 days of the date of the act or lose the ability to recover for it. *Id.*

In evaluating when the 300-day period begins, "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis added in *Ricks*). Where the alleged discriminatory act is the denial of tenure, the 300-day limitations period commences "at the time the tenure decision was made and communicated … even though … the effects of the denial of tenure … did not occur until later." *Id.* Thus, even if a teacher is not terminated until well after tenure is denied, the 300-day period begins to run when tenure is denied, not when the termination occurs. *Id.*

"The filing deadline for the formal [EEOC] complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (summary order) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (bracketed material added in *Roy*). "However, equitable tolling is only appropriate in … rare and exceptional circumstance[s] … in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotation marks and citations omitted). "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261; *John v. New York City Dep't of Educ.*, 313 F. App'x 404, 405 (2d Cir. 2009).

In this case, Borst's ADEA and ADA claims are time-barred. The amended complaint chronicles a series of allegedly discriminatory acts, ending with the decision to deny Borst tenure

in late June 2015. The 300-day limitation period began to run on June 30, 2015 – the date she received the tenure decision – even though Borst may have continued working for some period of time after that. *See Ricks*, 449 U.S. at 258. Yet, according to Borst's own pleading, Borst did not file her EEOC charge until August 2016 – more than a year later. Although Borst filed a grievance and appealed the denial of tenure, these acts did not toll the 300-day limitations period. *See Ricks*, 449 U.S. at 261.

While the amended complaint suggests that some New York City public schools may have refused to hire her, Borst does not allege that these refusals to hire were themselves discriminatory acts. Rather, the amended complaint expressly alleges that these actions were consequences of the unfair ratings she received at I.S. 162X prior to June 30, 2015.

Borst does not allege a basis for equitable tolling of the 300-day limitations period. Rather, in her Memorandum of Law in Opposition to Defendants' Motion to Dismiss (the "Opposition Memo"), Borst attempts to rebut Defendants' timeliness argument by invoking a "continuing violation" of the federal employment discrimination statutes. "There is indeed a 'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when 'there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests.'" *Harris*, 186 F.3d at 248 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). "In that situation the existence of such a continuing discriminatory practice or policy may delay the commencement of the statute of limitations period 'until the last discriminatory act in furtherance of it.'" *Id.* (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)).

There are two problems with Borst's "continuing violation" argument. First, the continuing violation doctrine only "applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [ ] practice.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir.

2015) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). It does not apply "to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (quoting *Morgan*, 536 U.S. at 114–15). Thus, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).

Borst's pleadings allege a series of discrete acts constituting multiple incidents of discrimination. They do not allege a hostile work environment or a discriminatory policy that could give rise to a continuing violation.

Second, Borst does not allege even one unlawful discriminatory act that occurred within the 300 days preceding the filing of the EEOC charge. "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004). None of the acts alleged to have occurred within the 300 days prior to August 2016, were acts of discrimination. The appeals from the denial of probation completion and the appeal from the denial of tenure were attempts to remedy allegedly discriminatory acts which took place in June 2015. Even if those appeals were denied within the 300-day period, the denials were not separate discriminatory or retaliatory acts, and did not extend the time to bring an EEOC charge. *See Ricks*, 449 U.S. at 261. Similarly, as noted above, the public schools' refusals to hire Borst were consequences of allegedly discriminatory ratings Borst received in the 2014–15 school year and not independent acts of discrimination or retaliation. Accordingly, the continuing violation theory does not save Plaintiff's claim.

B. Prima Facie Tort

Borst's third cause of action, alleging prima facie tort, is also untimely. Under New York Education Law § 3813(2), tort actions against a school district or its officers must be "commenced pursuant to the provisions of section fifty-i of the general municipal law." Section 50-i provides that a tort action, other than one for wrongful death, must "be commenced within one year and ninety days after the happening of the event upon which the claim is based …." Although there is case law "obliquely suggest[ing] that § 3813(2) generally does not apply to federal claims," *U.S.W.U. Local 74 Welfare Fund ex rel. Alladeen v. Monticello Cent. Sch. Dist.*, No. 13-CV-1779 (ENV)(MDG), 2014 WL 2214211, at *2 (E.D.N.Y. May 28, 2014) (citing cases), those same cases hold that § 3813(2) applies to state-law claims. *See, e.g.*, *Klein v. City of New York*, No. 10-CV-9568 (PAE)(JLC), 2011 WL 5248169, at *9 (S.D.N.Y. Oct. 28, 2011) (holding that "non-federal claims against the DOE are subject to the statutes of limitations provided in New York Education Law § 3813"), *report and recommendation adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012); *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 204 (E.D.N.Y. 2002) (holding that "any state cause of action against the Board of Education" is subject to the limitations periods set forth in §3813).

Borst's pleadings do not allege any tortious acts during the one-year-and-ninety-day period preceding the commencement of this action on May 19, 2017. Borst was denied tenure at the end of June 2015 – almost two years before she commenced this action. Although she appealed her termination, those appeals did not toll the limitations period or extend her time to bring a tort action relating to this termination. *See Kahn v. New York City Dep't of Educ.*, 18 N.Y.3d 457, 465–66 (2012) (citing cases); *Vassilev v. City of New York*, No. 13-CV-5385 (PAC), 2014 WL 3928783, at *4 (S.D.N.Y. Aug. 12, 2014). Moreover, while Borst alleges that she was denied the opportunity to work at New York public schools during the one-year-and-ninety-day

13

period between February 18, 2016, and May 19, 2017, she does not allege that these constituted independent torts. Rather, she expressly alleges that these were consequences of unfair ratings she received prior to her termination. Since Borst's amended complaint does not allege any tortious acts that occurred after February 18, 2016, her prima facie tort claim is time-barred.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted and Borst's action is dismissed in its entirety. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff in accordance with this memorandum and order and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 27, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN. R. MAUSKOPF
United States District Judge